IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MAYO MARRS CASING PULLING, INC. § <br> f/k/a TSNT ENTERPRISES, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> P&K EQUIPMENT, INC., § <br> P&K WIND ENERGY, LLC, § <br> XZERES CORP., § <br> XZERES HOLDINGS, LLC, § <br> XZERES ENERGY SERVICES, INC. § <br> a/k/a XZERES ENERGY SERVICES CORP., § <br> § <br> Defendants. § | | 2:20-CV-057-Z-BR |

**MEMORANDUM OPINION AND ORDER**

This is a breach of contract suit involving multiple business entities. Before the Court is Defendant Xzeres Holdings, LLC's ("Xzeres Holdings") Amended Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") (ECF No. 28), filed on April 13, 2020. In response, Plaintiff requests leave to conduct jurisdictional discovery. For the reasons that follow, the Court defers ruling on the Motion and permits Plaintiff to conduct jurisdictional discovery. Plaintiff shall file a written document with the Court detailing the specific, narrowly tailored discovery requested—*i.e.*, interrogatories and/or depositions on identified persons, requests for production, etc.,—on or before August 10, 2020. Xzeres Holdings shall file a response to the request by August 17, 2020.

**I.     BACKGROUND**

In 2012, Plaintiff Mayo Marrs (then known as TSNT Enterprises, Inc.,) negotiated with Defendants P&K Equipment, Inc., and P&K Wind Energy, LLC, (hereinafter "P&K Entities") for the purchase and installation of two wind energy turbines and towers in Childress County, Texas.

The P&K Entities were an authorized dealer for Xzeres Wind Corp. Thereafter, Xzeres Wind Corp., became Xzeres Corp.,—one of the three remaining Defendants in this case: (1) Xzeres Corp., (2) Xzeres Holdings, LLC, ("Xzeres Holdings") and (3) Xzeres Energy Services, Inc. ("Xzeres Energy"), a.k.a. Xzeres Energy Services Corp. (collectively the "Xzeres Entities"). Plaintiff alleges that one or more of the Xzeres Entities manufactured the wind towers.

From the outset, Plaintiff began to experience myriad problems with the wind towers. In 2013, Plaintiff filed suit in Texas state court naming Xzeres Energy[1] and the P&K Entities as defendants. On February 25, 2015, the parties entered into a settlement agreement. In accordance with the settlement agreement, the state court defendants paid Plaintiff a lump sum of $45,000, reimbursed Plaintiff $4,940 for repairs, and bi-annual inspections of the wind towers occurred until 2019. However, Plaintiff alleges that Defendants failed to comply with a plethora of other obligations according to the settlement agreement as problems with the wind towers continued.

In early 2016, Xzeres Energy dissolved as a legal entity. Nonetheless, the bi-annual inspections continued to occur by persons representing themselves as working for "Xzeres." Over the next three years, these individuals performed some of the obligations of the settlement agreement for the now-dissolved entity, Xzeres Energy. These individuals included Mike Ruhl, Raymond Mendoza, Tyler Melton, John McCoury, and Ben Fleskes (hereinafter referred to as the "Maintenance Men"). Plaintiff communicated by email with Mike Ruhl, Skyler Landess, David Hofflich, and a T. Walkowski. Each of these individuals used email addresses that have a domain of "xzeres.com" and a signature block including "Xzeres Corp. A Ravago Company."[2] Interestingly, Xzeres Corp. maintains that none of these individuals acted as its employees and/or

---

[1] Although Plaintiff named Xzeres Energy Services *Corp*., as a defendant in the 2013 state court suit, the entity that entered into the settlement agreement signed under the name Xzeres Energy Services, *Inc*.
[2] Ravago Holdings America, Inc., is also a member and manager of Xzeres Holdings. ECF No. 10 at ¶ 2.

contractors. But for whom these individuals worked is both enigmatic and crucial to the resolution of many issues before the Court—issues that cannot be solved without delving into the complex corporate structures that cloak the Xzeres Entities.

From its formation until December 2015, Xzeres Corp. was a publicly traded company. On December 11, 2015, Xzeres Holdings was formed "for the purpose of acquiring and holding all of the issued and outstanding stock of Xzeres Corp." ECF No. 30 at ¶ 3. On January 1, 2016, Xzeres Holdings acquired all of the stock and one hundred percent of the membership interest in Xzeres Corp. The three managers of Xzeres Holdings and the three officers of Xzeres Corp. are the same individuals. In June 2019, Xzeres Corp.—claiming it was insolvent—filed an Assignment for Benefit of Creditors ("ABC") in Delaware. In the ABC, Xzeres Holdings is the only named secured creditor, holding a security interest against all of Xzeres Corp.'s assets. To make matters more complex, another entity, Xzeres Assignee, LLC, enters the fray.

While not a party to this case, Plaintiffs allege that Xzeres Assignee, LLC is set to receive all of Xzeres Corp.'s assets for the benefit of Xzeres Holdings and to the detriment of Xzeres Corp.'s creditors—*i.e.*, Plaintiff. Plaintiff further alleges that Xzeres Holdings controls Xzeres Corp. and Xzeres Assignee, LLC to such a degree that there is an alter ego relationship between the Xzeres Entities. Plaintiff claims that the Xzeres Entities have played a "shell game" with their corporate structure to avoid liabilities to current and future creditors.

On February 10, 2020, Plaintiff filed this suit in Texas state court, and Xzeres Holdings removed it to this Court. While the P&K Entities filed an initial Rule 12(b)(6) Motion to Dismiss (ECF No. 14), it is Xzeres Holdings' Rule 12(b)(2) Motion (ECF No. 28) that is before the Court at this time. Although without specificity, Plaintiff requests that the Court grant leave to conduct jurisdictional discovery into the relationships between the various Xzeres Entities.

## II.     LEGAL STANDARD

"A district court has broad discretion regarding whether to permit a party to conduct jurisdictional discovery." *Mary Kay, Inc., v. Agudelo*, No. 3:19-CV-3027-D, 2020 WL 1692964, at *1 (N.D. Tex. Apr. 7, 2020) (Fitzwater, J.) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283-84 (5th Cir. 1982)). The district court may order jurisdictional discovery after the party seeking discovery makes a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (cleaned up).

"Discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal marks omitted) (citing *Wyatt*, 686 F.2d at 284). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt*, 686 F.2d at 284. "A court can deny leave to conduct jurisdictional discovery when the movant fails to specify the facts it believes discovery would uncover and how these facts would support personal jurisdiction." *Mary Kay*, 2020 WL 1692964 at *1 (citing *King v. Hawgwild Air, LLC*, No. 3:08-CV-0153-L, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008) (Lindsay, J.)).

## III.    ANALYSIS

Xzeres Holdings asserts that it is not subject to personal jurisdiction in the State of Texas. Plaintiff seeks to establish this Court's jurisdiction over Xzeres Holdings in two ways: (1) specific personal jurisdiction; and (2) the alter ego theory of personal jurisdiction. At issue is whether Plaintiff meets the requisite preliminary showing of jurisdiction to merit discovery. While Xzeres

Holdings argues that jurisdictional discovery is unnecessary because it has negated any potential basis for personal jurisdiction as a matter of law, the Court disagrees. The Court concludes that jurisdictional discovery is necessary on both theories of personal jurisdiction.

### A. Specific Personal Jurisdiction

This Court may have specific personal jurisdiction over Xzeres Holdings. "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (internal marks omitted) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). To merit discovery, Plaintiff need only make a "preliminary showing of jurisdiction" at this stage in the litigation. *Fielding*, 415 F.3d at 429. "A preliminary showing is less than a prima facie showing." *Harvest Nat. Res., Inc. v. Garcia*, No. H-18-483, 2018 WL 2183968 at *2 (S.D. Tex. May 11, 2018). "Discovery of jurisdictional facts is appropriate when the existing record is inadequate to support personal jurisdiction and the record shows that the requested discovery is likely to produce facts needed to withstand a motion to dismiss." *Premier Polymers, LLC v. Wendt*, 2015 WL 6394441, at *1 (S.D. Tex. Oct. 21, 2015) (citing *Monkton Ins. Svcs., Ltd. v. Ritter,* 768 F.3d 429, 434 (5th Cir. 2014)).

Plaintiff meets the requisite "preliminary showing of jurisdiction" to be entitled to discovery on the issue of personal jurisdiction. *Fielding*, 415 F.3d at 429. Plaintiff alleges that "the Xzeres Entities sent employees or contractors to inspect and service the two wind towers in Childress County, Texas throughout 2016, 2017, and 2018." ECF No. 27, Ex. A at ¶ 5. Xzeres Holdings contends that it did not *employ* the Maintenance Men who serviced and maintained Plaintiff's wind towers after the dissolution of Xzeres Energy. However, Plaintiff alleges that "Xzeres Holdings directed . . . the employees of Xzeres Corp. to perform the services required by

Xzeres Energy in the [settlement agreement] during the times that such services were actually provided." ECF No. 24 at ¶ 24. Plaintiff's Amended Complaint raises issues of jurisdictional fact that are not resolved by the pleadings and many other issues of fact remain.

These questions include, among others, (1) how the Maintenance Men were paid, (2) where that money came from, (3) who directed the activities in Childress County, Texas, (4) what is the relationship between the services performed by the Xzeres Entities and the email communications with persons employed by "Xzeres Corp. A Ravago Company." These facts will inform the Court's jurisdictional analysis and may be ascertained through discovery.

While Plaintiff's allegations fall short of the prima facie showing of personal jurisdiction required to definitively deny Xzeres Holdings' Motion, they are sufficient to demonstrate that "the existence of the requisite contacts with Texas is possible." *Mary Kay*, 2020 WL 1692964 at *2. Discovery may reveal that Xzeres Holdings "purposefully directed" activities in Texas through its involvement in the performance of the settlement agreement. Accordingly, the Court hereby FINDS that jurisdictional discovery is appropriate on the issue of specific personal jurisdiction.

### B.     Alter Ego Theory of Personal Jurisdiction

Additionally, this Court may have jurisdiction over Xzeres Holdings under the alter ego theory of personal jurisdiction. Due process allows the Court "to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). "To succeed under an alter ego theory, the plaintiff seeking to establish personal jurisdiction must show that the parent controls the internal business operations and affairs of the subsidiary." *Di Piazza v. Weather Grp. Television, LLC*, No. 5:19-CV-060-C,

2019 WL 8107917, at *3 (N.D. Tex. Sept. 9, 2019) (Cummings, J.) (cleaned up). Here, Plaintiff need only make a preliminary showing that Xzeres Holdings controls the internal business operations and affairs of Xzeres Corp.

"To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002) (citations omitted). "In Texas, a subsidiary corporation's contacts can be imputed to its parent corporation when the subsidiary 'is organized and operated as a mere tool or business conduit' of the parent." *Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc.*, 346 F. Supp. 3d 908, 928 (S.D. Tex. 2018) (quoting *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 85 (Tex. App.—Houston [1st. Dist.] 2008, no pet.)).  But Plaintiff must also show a "plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family." *Di Piazza*, 2019 WL 8107917, at *3 (cleaned up).

Xzeres Holdings argues that Plaintiff cannot prevail on its alter ego theory of jurisdiction. However, "jurisdictional veil piercing and substantive veil-piercing involve different elements of proof." *PHC-Minden v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). The relevant factors that the Court considers for the *jurisdictional* veil piercing—*i.e.*, alter ego theory of jurisdiction—include:

1. The amount of stock owned by the parent of the subsidiary;
2. Whether the entities have separate headquarters, directors, and officers;
3. Whether corporate formalities are observed;
4. Whether the entities maintain separate accounting systems; and
5. Whether the parent exercises complete control over the subsidiary's general policies or daily activities.

*Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)); *see also Licea v. Curacao Drydock Co.*, 952 F.3d 207, 213 (5th Cir. 2015).

Plaintiff contends that it has made sufficient allegations to invoke alter ego jurisdiction over Xzeres Holdings. ECF No. 40 at 7. These allegations include the following:

1. Xzeres Holdings owns all of the stock in Xzeres Corp.;
2. For the past two years, Xzeres Corp. and Xzeres Holdings have had the same shareholders, directors, officers, and employees;
3. Xzeres Holdings and Xzeres Corp. share the same headquarters;
4. Xzeres Corp. received its operating capital from Xzeres Holdings;
5. Xzeres Corp. and Xzeres Holdings do not keep separate books and accounts;
6. Xzeres Corp. and Xzeres Holdings have common business departments;
7. Xzeres Holdings directed the day-to-day operations of Xzeres Corp. for at least the last four years;
8. Xzeres Holdings controlled the internal business affairs of Xzeres Corp.;
9. While Xzeres Holdings may have a different name than Xzeres Corp., they are for all intents and purposes the same entity; and
10. Xzeres Holdings used Xzeres Corp. to perform the business functions of the Xzeres trade name in order for Xzeres Holdings to avoid liability.

ECF No. 24 at ¶¶ 23, 25. Defendant Xzeres Holdings contests some of these allegations. *See* ECF No. 30 at ¶¶ 5, 7. Defendant submitted two declarations by Jeff Bittenbinder, the Chief Financial Officer and Treasurer of Ravago Holdings America, Inc. ("Ravago") and manager of Xzeres Holdings. ECF No. 10 at ¶ 1; ECF No. 30 at ¶ 1. These two declarations total about four pages in length. In the second declaration, Defendant asserts that Xzeres Holdings and Xzeres Corp. maintain separate accounts and books, that Xzeres Holdings does not direct the day-to-day operations of Xzeres Corp., and that Xzeres Corp. manages its own operations. ECF No. 30, ¶ 5. Xzeres Holdings relies primarily on three sentences in support of its Motion. These assertions do not persuade the Court that discovery is unnecessary on the alter ego theory of personal jurisdiction.

Plaintiff's allegations do not definitively establish a case for *substantive*-veil piercing. However, there remain too many issues of fact surrounding the relationship between Xzeres Holdings and Xzeres Corp. for the Court to reject Plaintiff's request for jurisdictional discovery. The Court concludes that Plaintiff has met its burden of a "preliminary showing" of personal jurisdiction under the alter ego theory and should be granted leave to request discovery limited to the issue of personal jurisdiction over Xzeres Holdings.

IV.    CONCLUSION

Accordingly, the Court DEFERS ruling on Xzeres Holdings' Motion (ECF No. 28) and ORDERS Plaintiff to file a proposed discovery order that details the specific, narrowly tailored discovery requested—*i.e.*, interrogatories and/or depositions on identified persons, requests for production, etc.,—that is no more burdensome than necessary on or before **August 10, 2020**. It is further ORDERED that Xzeres Holdings shall file a response to Plaintiff's proposed discovery order and state that it either (1) agrees to each request or (2) objects to the request, in good faith, detailing its justification for such objection on or before **August 17, 2020.** *See Fiduciary Network, LLC v. Buehler*, 2015 WL 2165953, at *9 (N.D. Tex. May 8, 2015) (Lynn, C.J.).

**SO ORDERED.**

August 4, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE